Ronald F. Price (5535)
Price Parkinson & Kerr, PLLC
5742 West Harold Gatty Drive, Suite 101
Salt Lake City, Utah 84116
Telephone:  (801) 530-2964
E-mail:  ronprice@ppktrial.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | |
|---|---|
| PATRICIA REYES,<br><br>Plaintiff,<br><br>v.<br><br>N.A.R., INC. and OLSON ASSOCIATES, P.C.,<br><br>Defendants. | **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Case No. 1:20-cv-00007<br><br>Judge Howard C. Nielson, Jr. |

Defendants N.A.R., Inc. ("NAR") and Olson Associates, P.C. ("OA") (NAR and OA are sometimes hereinafter collectively referred to as "Defendants") submit the following motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiff's claims are predicated on two theories: (1) in the underlying state court collection action (the "State Court Lawsuit") Defendants sought to collect a collection charge when there was allegedly "no provision in the IHC terms[1] for the Plaintiff's

---

[1] The IHC terms to which the Complaint refers are contained in the IHI Terms and Condition which Plaintiff executed on July 30, 2018 (the "IHC Agreement"), a copy of which is attached as an Exhibit to the complaint (the "State Court Complaint") filed in the State Court Lawsuit. Indeed, Plaintiff's Complaint specifically alleges that IHC Agreement was attached as an exhibit to the State Court Complaint. Complaint, ¶ 85.

payment of that percentage collection charge[;]" and (2) in connection with settlement discussions in the State Court Lawsuit Defendants made a settlement offer to Plaintiff which included, as part of the offer, a proposed confession of judgment[2] which, according to the Complaint, is allegedly prohibited by the Utah Consumer Credit Code ("UCCC"). *See, e.g.,*, Complaint ¶¶ 40, 27. Using these two theories, the Complaint purports to assert claims predicated on (a) alleged violation of the Fair Debt Collection Practices Act ("FDCPA"), (b) alleged violation of the UCCC, and (c) alleged violation of the Utah Communications Fraud Act ("UCFA").

The FDCPA and UCFA claims are predicated on the both the collection charge and the confession of judgment theories. *See* Complaint, Counts I-IV. The UCCC claims are predicated solely on the confession of judgment theory. *See* Complaint, Counts V-IX.

As discussed in more detail below, Plaintiff's claims fail for, *inter alia*, the following reasons:

- as to the claims predicated on the "collection charge" theory, the claims fail because (a) the charge is in fact permitted by the IHC Agreement, and (b) the claims are barred by the Petition Clause immunity doctrine, and (c) the UCFA claims are barred by Utah's judicial proceedings privilege.

- as to the claims predicated on the "confession of judgment" theory, they are barred because: (a) the UCCC does not apply to Defendants because neither Defendant is a "creditor" as defined by the UCCC, (b) Plaintiff rejected the settlement offer

---

[2] Defendants dispute that the alleged confession of judgment included as part of the settlement offer made to Plaintiff meets all of the formal requirements of a true confession of judgment. Nevertheless, for purposes of this motion only, the Court can presume that the settlement offer included a formal confession of judgment.

which included the alleged confession of judgment; but the UCCC does not create a cause of action for an attempted violation of the statute, (c) the claims are barred by the Petition Clause immunity doctrine, and (d) the state law claims are barred by Utah's the judicial proceedings privilege.

## STATEMENT OF FACTS

Although Plaintiff's claims are premised entirely on two alleged facts, a number of additional facts set forth in the Complaint are relevant to this motion. Additionally, several documents which are specifically referenced in the Complaint, and upon which Plaintiff bases her claims, also are relevant.[3] These facts are set forth below.[4]

1. Plaintiff is a consumer under the FDCPA. Complaint, ¶ 7.

2. NAR is a debt collector under the FDCPA. *Id.* ¶ 10.

3. OA is a debt collector under the FDCPA. *Id.* ¶ 13.

4. OA is a law firm and represents NAR in the State Court Lawsuit. *Id.* ¶ 14.[5]

5. Plaintiff incurred a debt for medical services on July 30, 2018. *Id.* ¶ 37.

---

[3] "'In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also . . . documents incorporated into the complaint by reference[.]" *Latoour v. Lending Club Corp.*, Case No. 2:19-cv-00042, 2020 WL 1517409, *3 (D. Utah March 6, 2020) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). *See also Hua Cai v. Huntsman Corp.*, Case No. 2:18-cv-968, 2019 WL 2502934, *2 (D. Utah June 17, 2019) ("The Court 'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity') (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Accordingly, this Court can consider Exhibits A and B hereto in connection with ruling on this motion.

[4] Defendants do not believe all of the facts alleged in the Complaint are true. Accordingly, inclusion of a specific allegation herein should not be construed as an admission by Defendants. Nevertheless, for purposes of this motion the Court can accept the well-pleaded facts as true.

[5] A copy of the complaint filed in the State Court Lawsuit (the "State Court Complaint") is attached hereto as Exhibit "A".

6.     In connection with receiving those medical services, Plaintiff signed the IHC Agreement. A copy of the IHC Agreement is attached as an exhibit to the State Court Complaint, Exhibit A hereto. *See also* Complaint, ¶¶ 39, 40.

7.     That debt was assigned to NAR for collection. *See* Complaint. at ¶ 38. *See also* State Court Complaint.

8.     The State Court Complaint included a collection charge based on a percentage of the balance owing. Complaint ¶ 40.

9.     The Complaint alleges that the IHC Agreement does not contain a provision for a collection charge. *Id.* However, the IHC Agreement provides that Plaintiff agreed to pay, *inter alia* "**all costs** . . . that the Facility or an independent contractor ***incurs directly or indirectly if either refers my overdue bill for collection***." IHC Agreement, ¶ 9(e) (emphasis added).

10.    On about August 20, 2019, Defendants emailed Plaintiff a settlement offer. That settlement offer included, *inter alia*, a proposed confession of judgment. *See, e.g.,* Complaint, ¶¶ 41-44. A copy of the referenced settlement is included as part of Exhibit B hereto.

11.    Plaintiff rejected the settlement offer and sent OA proposed changes to the settlement offer. Ultimately, the parties did not reach a settlement, and Plaintiff never signed the proposed settlement offer. *See, e.g.,* 43-45. A copy of the edited settlement offer referenced in ¶¶ 43 and 44 of the Complaint is included as part of Exhibit B.

13.    The Complaint alleges that Defendants are "concealing [the allegedly] unauthorized [collection] charge by including it in an overstated lump sum amount

alleged to be the balance due." Complaint, ¶ 2. This allegation is demonstrably false. The State Court Complaint clearly, unambiguously and expressly states:

> WHEREFORE, Plaintiff prays for judgment against Defendant(s) in the sum of $280.84, **together with a collection agency fee of $112.33**, court costs, and interest thereon at 0.00% per annum since 03/25/2019, post judgment interest at 8.00% per annum from the date of judgment, and a reasonable attorney's fee pursuant to Rule 73(d), Utah Rules of Civil Procedure, in the amount of $350, or as established by affidavit pursuant to 73(a) URCP.

State Court Complaint, at 2, Exhibit B hereto (emphasis added).[6]

14. The Complaint purports to allege, that for purposes of their claim under the UCCC, Defendants are each a "creditor" under the UCCC. *See, e.g.,* Complaint, ¶¶ 11, 15. However, that allegation is legal conclusion and, in any event, when viewed through the prism of the definition of "creditor" contained in the UCCC, the facts are clear that Defendants are *not* creditors as defined in the UCCC. *See, e.g.,* Utah Code Ann. § 70C-1-302(3)(a).

## ARGUMENT

### I. APPLICABLE STANDARD

The standard on a Rule 12(b)(6) motion is well-knows. As recently framed by the Honorable Ted Stewart:

> In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party. Plaintiff must provide

---

[6] Given that the State Court Complaint clearly states that NAR was seeking to recover a "collection agency fee of $112.33", it is difficult to understand how the Plaintiff can allege, in good faith, that Defendants were "concealing" that charge. Furthermore, this Court need not accept the Complaint's allegation of concealment as true. *See, e.g., Garcia-Rodriguez v. Gomm*, 169 F. Supp. 3d 1221, 1230 (D. Utah 2016) ("[F]actual allegations contradict a properly considered document are not well-pleaded facts that the court must accept as true") (quoting *Farrell–Cooper Min. Co. v. United States DOI*, 728 F.3d 1229, 1237, n. 6 (10th Cir.2013)).

enough facts to state a claim to relief that is plausible on its face, which requires more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.

The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. As the Court in *Iqbal* stated,

> [o]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.

*Hua Cai*, 2019 WL 2502934 at *1 (internal quotations and footnotes omitted).

Here, Plaintiff's Complaint fails to meet the applicable standard and, therefore, must be dismissed. Furthermore, for the reasons discussed herein, no amount of repleading can save the Complaint. Accordingly, the dismissal should be with prejudice.

II. **THE IHC AGREEMENT PERMITS THE ASSESSMENT OF A COLLECTION CHARGE AND, THEREFORE, THE CLAIMS PREDICATED ON THE COLLECTION CHARGE THEORY FAIL AS A MATTER OF LAW**

The IHC agreement provides, in part, that Plaintiff would pay ""***all costs*** . . . that the Facility or an independent contractor ***incurs directly or indirectly if either refers my overdue bill for collection***." IHC Agreement, ¶ 9(e). This language permits NAR to impose the collection fee at issue because it is a "cost[] . . . that the Facility or an independent contractor incurs directly or indirectly" as a result of the account being referred for collection. *Id.* As stated by the United States District Court, Northern District of Illinois, "[a] creditor simply passing off a debt collection fee to a consumer that the

creditor would incur from the debt collector, without more, cannot possibly constitute an "unfair or unconscionable means to collect or attempt to collect any debt . . ." *Levine v. Creditors' Protection Service, Inc.*, Case No. 17 C 2537, 2019 WL 1077126, *8 (N.D. Ill. March 7, 2019).

Similarly, in *Berna v. NRA Group, LLC*, 930 F.3d 891 (7th Cir. 2019), the court was presented with whether a "collection fee" charged by the debt collector was permitted by the following language contained in the debtor's agreement: "you will be billed for any amounts that are due and owing plus any costs (including reasonable attorney's fees) incurred by us in attempting to collect amounts due or otherwise enforcing this agreement." *Id.* at 892. In affirming the district court's dismissal of an FDCPA complaint, the 7th Circuit held that the "collection fee" charged by the debt collector was a "cost" to the original creditor and, therefore, did not violate the FDCPA. The Seventh Circuit expressly rejected the plaintiff's argument that the contract at issue authorized only "actual costs", stating: "the contract never uses the term "actual costs," nor does anything in the text suggest it should be read so restrictively." *Id.* at 893. The Seventh Circuit went on to state:

> the contract explicitly allows for "any costs." As the Supreme Court recently reiterated, the word "any" signifies breadth. *See Smith v. Berryhill*, ⎯⎯ U.S. ⎯⎯, 139 S. Ct. 1765, 1774, ⎯⎯ L.Ed.2d ⎯⎯ (2019) (explaining that "Congress' use of the word 'any' suggests an intent to use that term expansively") (quotation marks and alteration omitted); *Home Depot U.S.A., Inc. v. Jackson*, ⎯⎯ U.S. ⎯⎯, 139 S. Ct 1743, 1750, ⎯⎯ L.Ed.2d ⎯⎯ (2019) (noting that " 'any' ordinarily carries an expansive meaning," at least as a general rule) (quotation marks omitted).
>
> Dictionary definitions confirm that the phrase "any costs" is broad enough to include this fee. A "cost" is simply an "amount paid or charged for something." Cost, BLACK'S LAW DICTIONARY (10th ed. 2014).

*Id.* The *Bernal* court went on to reject the plaintiff's assertion that the term "all cost" should be narrowly construed to include only "costs" awarded to a winning litigant. *Id.*

Defendants acknowledge that the language at issue in *Bernal* involved the word term "any costs" whereas the language here is "all costs". However, the word "all" is a synonym for the word "any." *See, e.g.,* Black's Law Dictionary, Sixth Ed. (1990) (stating that the "[w]ord 'any' has a diversity of meaning and may be employed to indicate 'all' or 'every' . . . It is often synonymous with 'either', 'every', or 'all'.) Accordingly, just as the *Bernal* court had no problem affirming the district court's dismissal of the plaintiff's FDCPA claim, this Court should likewise dismiss, with prejudice, Plaintiff's claims predicated on the "collection charge" theory.

### III.  THE CLAIMS PREDICATED ON THE CONFESSION OF JUDGMENT THEORY FAIL AS A MATTER OF LAW

#### A.  NEITHER DEFENDANT IS A "CREDITOR" UNDER THE UCCC

Plaintiff's confession of judgment theory is predicated on Utah Code Ann. § 70C-2-201 which provides that "[a] *creditor or its successor in interest* may not, directly or indirectly, take or receive from a debtor an obligation that constitutes or contains a cognovit or confession of judgment, warrant of attorney, or other waiver of the right to notice and the opportunity to be heard in the event of suit or process thereon." Utah Code Ann. § 70C-2-201 (emphasis added). The fundamental problem with Plaintiff's theory is that neither Defendant is a "creditor" under the UCCC, which defines "creditor" as:

(i) a party:

    (A) who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments, not including a down payment; and

  (B) to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract;

 (ii) an issuer of a credit card that extends either open-end credit or credit that:

  (A) is not subject to a finance charge; and

  (B) is not payable by written agreement in more than four installments; and

 (iii) an issuer of a credit card that extends closed-end credit that:

  (A) is subject to a finance charge; or

  (B) is payable by written agreement in more than four installments.

Utah Code Ann. § 70C-1-302(3)(a).

  Subsections (ii) and (iii) clearly do not apply here, as this matter does not involve a credit card, and there is no allegation that NAR or OA are issuers of credit cards. That leaves only subsection (i) as Plaintiff's sole basis for claiming that Defendants are creditors. However, Plaintiff's own Complaint is fatal to any assertion that Defendants are "creditors" under subsection (i). First, the Complaint does not, and cannot in good faith within the confines of Rule 11, allege that either Defendant "regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments, not including a down payment." Utah Code Ann. § 78C-1-302(3)(a)(i)(A). Indeed, the term "finance charge" appears nowhere in the Complaint.

  Second, the Complaint does not allege that either NAR or OA is the party "to whom the obligation is initially payable . . ." Utah Code Ann. § 78C-1-302(3)(a)(i)(B). On the contrary, the Complaint alleges that exact opposite – that the obligation was originally owed to a health care provide in connection with the birth of Plaintiff's child. *See* Complaint, ¶ 37. Furthermore, the various documents on which Plaintiff relies for her

9

claims (i.e, the settlement offer and the State Court Complaint) demonstrate that the debt was originally owed to Mountain West Anesthesia, and that the debt was assigned to NAR for collection. *See, e.g.,* Exhibits B and C.

Defendants also note that, as to OA, there is no allegation in the Complaint that the debt was ever owed to OA. Instead, the Complaint attempts to allege that OA is a creditor because OA "[a]s the agent for Defendant N.A.R., Inc., the Defendant Olson Associates, P.C. ***acted*** as a creditor under the UCCC." Complaint, ¶ 15 (emphasis added). But the UCCC provides no cause of action against someone who "acts" as creditor.

Simply stated, neither Defendant is a "creditor" under the UCCC. *See* Utah Code Ann. § 70C-1-302(3)(a). *See also Independent Financial, Inc. v. Wanna*, 39 Kan. App. 2d 733, 738, 186 P.3d 196, 199 (2008) (an "assignee . . . is by definition not a 'creditor' under the KUCCC"); *Rainey v. National Check Bureau, Inc.*, 849 N.E.2d 776, 780 (Ind. Ct. App. 2006) (finding that, under the virtually identical definition of creditor contained in Ind. Code. § 24-4.5.1-301(8), a debt collector was not a creditor under the Uniform Consumer Credit Code); *Walters v. PDI Management Services*, Case No. 1:02-cv-01100, 2004 WL 2137513, *2 (S.D. Ind. June 14, 2004) (finding that collection agency was not a creditor under Indiana's version of the Uniform Consumer Credit Code).

**B.   PLAINTIFF NEVER AGREED TO THE ALLEGED CONFESSION OF JUDGMENT**

The Complaint clearly alleges that Plaintiff rejected, and never entered into, the alleged confession of judgment. Thus, even if Defendants were creditors under the UCCC, which they are not, they never violated with UCCC with respect to Plaintiff because they never entered into a prohibited confession of judgment with her. And, the UCCC does not provide a cause of action for an "attempted" violation of the statute.

10

### III. PLAINTIFF'S CLAIMS ARE BARRED BY THE PETITION CLAUSE IMMUNITY DOCTRINE

"The First Amendment protects 'the right of the people ... to petition the Government for a redress of grievances.'" *CSMN Investments, LLC v. Cordillera Metropolitan District*, 956 F.3d 1276, 1282 (10th Cir. 2020) (quoting U.S. Const. Amend. I). "Immunity flows from this right, protecting those who seek redress through the courts from liability for petitioning activities. " *Id.* (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Furthermore, "[t]he Supreme Court has 'recognized this right to petition as one of 'the most precious of the liberties safeguarded by the Bill of Rights,' and ... explained that the right is implied by '[t]he very idea of a government, republican in form[.]'" *Id.* (quoting *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524–25 (2002).

The Tenth Circuit noted in *CSMN* that "[t]he contours of this immunity developed in a line of antitrust cases, giving rise to the moniker, *Noerr-Pennington* immunity.[,]" (*id.* at 1283) and expressly held that "[i]n this circuit, this immunity extends beyond antitrust situations." *Id.* However, while many courts have expressly extended and apply the *Noerr-Pennington* doctrine beyond the anti-trust context, the Tenth Circuit has chosen to reserve the term *Noerr-Pennington* for antitrust cases and, in cases outside of the anti-trust context, refers to this type of immunity as "Petition Clause immunity[.]" *Id.*

Defendants recognize that the Petition Clause does not immunize all conduct that may occur in connection with petitioning a court. Indeed, the courts have recognized a "sham-petitioning" exception. *CSMN*, 956 F.3d at 1283-86. The test in this circuit for whether a lawsuit constitutes "sham petitioning" such that it is not shielded by Petition

11

Clause immunity is whether the lawsuit is "objectively unreasonable". *Id.* at 1286. If the underlying lawsuit was "objectively reasonable", the Petition Clause grants immunity from subsequent suits predicated on the underlying lawsuit. *Id.*

Here, all of Plaintiff's claims arise out of the State Court Lawsuit. Furthermore, there is no allegation that the State Court Lawsuit was objectively unreasonable. Accordingly, all of Plaintiff's claims are barred by the U.S. Constitution's First Amendment Petition Clause immunity.[7]

## IV.   PLAINTIFF'S STATE LAW CLAIMS ARE BARRED BY UTAH'S JUDICIAL PROCEEDINGS PRIVILEGE

"Utah's judicial proceedings privilege has broad underlying principles." *V3 World Management, Inc. v. Synergy Worldwide, Inc.*, Case No. 2:16-cv-323, 2019 WL 575889, *2 (D. Utah Feb. 12, 2019) (quoting *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 30, 285 P.3d 1157, 1165). Judge Benson further explained in *V3 World* that "[t]he purpose of the privilege is to 'to promote the integrity of the adjudicatory proceeding and its truth finding processes.'). *Id.* (quoting *Pratt v. Nelson*, 2007 UT 41, ¶ 27, 164 P.3d 366) (internal quotation marks omitted). Furthermore, "[t]he privilege is of 'extraordinary scope,' tempered by "the court's inherent authority [to] provide adequate

---

[7] Defendants recognize that a number of courts outside of the Tenth Circuit have held that the *Noerr-Pennington* doctrine does not provide immunity from FDCPA claims. Some of those courts, however, have held that the *Noerr-Pennington* doctrine does not bar an FDCPA claim for "intentional misrepresentations in litigation." *Fritz v. Resurgent Capital Services, LP*, 955 F. Supp. 2d 163, 176 (E.D.N.Y. 2013). Here, although Plaintiff purports to plead a communications fraud claim, a review of the allegations reveals the claims really boil down to contract interpretation and interpretation of the UCCC. Thus, in reality, fraud is not an issue. And, regardless of what courts in other jurisdictions have said about application of the *Noerr-Pennington* doctrine to FDCPA claims, Defendants respectfully submit that under the facts of this case, and in this circuit, the Petition Clause immunity, as formulated and adopted by the Tenth Circuit, precludes Plaintiff's FDCPA claims.

safeguards[,]" (*id.* (quoting *Moss*, 2012 UT at ¶ 38)), and "applies to litigation statements and conduct during every stage of the litigation process." *Id.* (citing *Moss*, 2012 UT 42, ¶¶ 30-35).

This privilege operates to bar both state common law claims and state statutory claims, including a claim for identify theft under the UCFA. *See, e.g., Peterson v. XPO Logistics, Inc.*, Case No. 2:17-cv-307, 2017 WL 5054706, *3 (D. Utah Nov. 2, 2017) ("[t]he privilege applies to all of Peterson's tort claims and statutory claims for identity theft") (rev'd and remanded on other grounds by *Peterson v. XPO Logistics, Inc.*, ___ Fed. Appx. ___, 2020 WL 2121277 (10th Cir. May 4, 2020). *See also Graham v. U.S. Bank, N.A.*, Case No. 3:15-cv-0990, 2015 WL 10322087, *16 (D. Or. Dec. 2, 2015) ("Statutory torts are subject to the litigation privilege"); *Thomason v. Lehrer*, 183 F.R.D. 161, 166-67 (D.N.J. 1998) ("the litigation privilege has been expanded to encompass both common-law and statutory causes of action for tortious conduct").

Here, Plaintiff's state law claims are all predicated solely on conduct occurring in connection with and directly relating to the State Court Lawsuit. Accordingly, Plaintiff's state law claims are barred by Utah's judicial proceedings privilege.

**V.     THE UCFA DOES NOT PROVIDE A PRIVATE CAUSE OF ACTION**

Judge Stewart of this Court has recently held that the UCFA "does not permit a civil communications fraud claim." *Segment Consulting Management, Ltd. v. Streamline Manufacturing, LLC*, Case No. 2:19-cv-933, 2020 WL 907154, *3 (D. Utah Feb. 25, 2020). Accordingly, all of Plaintiff's claims predicated on the UCFA must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants request that this motion be granted in its entirety and that Plaintiff's Complaint, and all claims therein, be dismissed with prejudice.

Dated this 25th day of May, 2020.

**PRICE PARKINSON & KERR PLLC**

/s/ Ronald Price
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of May, 2020, the foregoing **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)** was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing by e-mail to all counsel of record.

/s/ Ronald Price