Ronald F. Price (5535)
Price Parkinson & Kerr, PLLC
5742 West Harold Gatty Drive, Suite 101
Salt Lake City, Utah 84116
Telephone: (801) 530-2964
E-mail: ronprice@ppktrial.com
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| PATRICIA REYES,<br><br>    Plaintiff,<br><br>    v.<br><br>N.A.R., INC. and OLSON ASSOCIATES, P.C.,<br><br>    Defendants. | **REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 1:20-cv-00007<br><br>Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg<br><br>(Oral Argument Requested) |

Defendants N.A.R., Inc. ("NAR") and Olson Associates, P.C. ("OA") submit the following reply memorandum in further support of their motion to dismiss.

## INTRODUCTION

Plaintiff does not dispute that all her claims arise out of Defendants' litigation efforts in the State Court Lawsuit, including Defendants' attempts to settle that lawsuit. Such concession highlights why her claims are barred by the Petition Clause immunity doctrine, and why her state law claims are barred by the judicial proceedings privilege.

Plaintiff's opposition ("Opp. Mem.") also demonstrates that this dispute boils down to a difference between how Plaintiff's counsel interprets certain provisions of the Utah Code and the IHC Agreement Plaintiff signed, and how Defendants interpret those

provisions and the IHC Agreement. But Plaintiff does not posit this case as simply one of statutory and contract construction. Rather, Plaintiff accuses Defendants of having engaged in fraudulent and criminal conduct simply because her counsel interprets the Utah Code and the IHC Agreement differently than do Defendants. *See, e.g.,* Opp. Mem. at 7-8, 23. Plaintiff's attempts to twist issues of statutory and contract construction and Defendants' attempts to settle a state lawsuit into unfounded allegations of fraudulent and criminal conduct are unavailing, and her claims should be dismissed with prejudice.

## ARGUMENT

I. **PLAINTIFF'S CLAIMS ARE BARRED BY THE PETITION CLAUSE IMMUNITY DOCTRINE**

   A. **PLAINTIFF'S STATE LAW CLAIMS ARE BARRED BY PETITION CLAUSE IMMUNITY**

Plaintiff's only response to the argument that her state law claims are barred by the Petition Immunity clause doctrine is to argue that the "sham petition exception" does not bar her claims. Opp. Mem. at 23-24. Thus, if the sham petition exception does not apply, all of Plaintiff's state law claims must be dismissed.

Plaintiff's argument fails for at least three reasons. First, for the sham petition exception to apply, Plaintiff must demonstrate that the State Court Lawsuit itself (not just certain aspects) was objectively unreasonable.[1] However, Plaintiff ***does not*** assert that the

---

[1] *See, e.g., CSMN Investments, LLC v. Cordillera Metropolitan District*, 956 F.3d 1276, 1283-1286 (10th Cir. 2020) (discussing the test for the sham petition exception); *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61 (1993) ("the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"); *Simon Property Group, Inc. v. Palombaro*, 682 F. Supp. 2d 508, 510 (W.D. Pa. 2010) (holding, in the context of *Noerr-Pennington*, "[i]f a party has probable cause to file a lawsuit, that lawsuit cannot be 'sham litigation'"); *Trustees of University of Pennsylvania v. St. Jude Children's Research*

2

State Court Lawsuit was objectively unreasonable. Rather, Plaintiff asserts only that certain discrete aspects of the State Court Lawsuit were objectively unreasonable.[2] *See* Opp. Mem. at 24.

Second, Plaintiff cannot, and has not even attempted to, satisfy both prongs of the two-step test which the Tenth Circuit Court of Appeals has adopted:[3]

> In determining the proper sham-petitioning test, *Professional Real Estate* provides a two-step approach: (1) is the petitioning objectively reasonable? (2) and only if not, what is the subjective intent behind the petitioning?[4]

As to the first prong, the State Court Lawsuit is not objectively unreasonable -- Plaintiff does not dispute that she owes at least a portion of the money NAR sued to recover. The Supreme Court's teachings as to what constitutes probable cause, in the context of the sham petition exception, are illuminating: "[p]robable cause to institute civil proceedings requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication."[5] Even if this Court were to ultimately conclude that Defendants' interpretation of the IHC Agreement and the Utah Code are

---

*Hospital*, 940 F. Supp. 2d 233, 247 (E.D. Pa. 2013) (as long as some claims in a lawsuit have a proper basis the lawsuit cannot be a sham for the sham petition exception); *Eden Hannon & Co v. Sumitomo Trust & Banking Co.*, 914 F.2d 566, 565 (4th Cir. 1990) (where plaintiff succeeded on one of four claims the lawsuit was "hardly a sham").

[2] Specifically, Plaintiff asserts that "it was objectively unreasonable for the Defendants to claim a percentage collection fee . . . [and] for the Defendants to include in their proposed Stipulation confession of judgment terms expressly prohibited by *Utah Code Ann*. § 70C-2-201 and *Utah Code Ann*. § 13-11-4(q)[2] . . ." Opp. Mem. at 24.

[3] *See, e.g., CSMN Investments*, 956 F.3d at 1286 ("we adopt *Professional Real Estate's* sham-petitioning test for determining whether conduct is a sham").

[4] *Id.* 1283-1284.

[5] *Professional Real Estate*, 508 U.S. at 62-63 (internal citations and quotations marks omitted).

3

erroneous, at a bare minimum Defendants' proffered interpretations are at least reasonable.[6] Whether they are ultimately unsuccessful on that issue is entirely irrelevant.[7]

As to the second prong of the sham petition exception (i.e., what is the subjective intent behind the petitioning), Plaintiff does not even mention or address the second prong. Such failure is fatal to her sham petition exception.

### B.   PLAINTIFF'S FDCPA CLAIM IS BARRED BY PETITION CLAUSE IMMUNITY

Defendants have acknowledged that a number of courts outside of this circuit have held that the *Noerr-Pennington* doctrine does not provide immunity from FDCPA claims. However, Defendants are not arguing that the *Noerr-Pennington* doctrine provides immunity from FDCPA claims. Rather, Defendants argue that Plaintiff's FDCPA claim is barred by the immunities which arise from the Petition Clause of the United States Constitution. Defendants submit that, as adopted by the Tenth Circuit, those immunities arising from the Petition Clause are broader than the immunities granted pursuant to the *Noerr-Pennington* doctrine.

Plaintiff correctly notes that Defendants did not, in their opening memorandum, mention the case of *Heintz v Jenkins*, 514 U.S. 291 (1995). But what Plaintiff fails to mention is that *Heintz* did not mention or address in any way the issue of Petition Clause immunity or, for that matter, *Neorr-Pennington*. Indeed, the words immune and immunity do not even appear in *Heintz*. Simply stated, *Heintz* is not dispositive of the issue here.

---

[6] The interpretation of the IHC Agreement, and whether NAR is permitted to recover a collection fee under the terms of the agreement is directly as issue in the State Court Lawsuit. Accordingly, in the event this Court declines to grant this motion to dismiss, Defendants anticipate bringing a motion to stay and to abstain, pending resolution of these issues in the State Court Lawsuit.

[7] Similarly, for the reasons discussed in Defendants' opening memorandum and *infra* at 7-8, there is no basis to conclude that Defendants' attempted use of a confession of judgment, in settlement discussions, was objectively unreasonable.

As far as Defendants have been able to determine, the issue presented here is one of first impression in this district and in the Tenth Circuit. Defendants respectfully submit that this Court should hold that, in the context of this case, Plaintiff's FDCPA claim is barred by the Petition Clause immunity doctrine.[8]

## II. PLAINTIFF'S STATE LAW CLAIMS ARE BARRED BY THE JUDICIAL PROCEEDINGS PRIVILEGE

If the Court dismisses Plaintiff's state law claims based on the Petition Clause immunity doctrine, the Court need not even rule on whether the judicial proceedings privilege also bars Plaintiff's state law claims. In the event the Court elects to address the judicial proceedings privilege, Defendants acknowledge there is no Utah appellate case which addresses whether the judicial proceedings privilege applies to statutory claims. However, Judge Kimball of this Court has expressly ruled that the judicial proceedings privilege bars statutory claims.[9] Similarly, Judge Stewart of this Court has indicated his belief that the judicial proceedings privilege applies to statutory claims.[10]

---

[8] Defendants do not ask this Court for a blanket ruling that FDCPA claims are always barred by Petition Clause immunity. The Sixth Circuit's opinion in *Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606 (2009) is instructive. There, the Sixth Circuit noted that "*Heintz* did not consider, however, whether the application of the FDCPA to statements made during judicial proceedings would violate the Constitution." *Id.* at 616. Then, without deciding whether the Petition Clause can ever apply in the context of the FDCPA, but assuming that it could, the Sixth Circuit held that "intentional" misrepresentations in litigation would not be immune from an FDCPA claim. *See id.* Here, Plaintiff's Complaint does not allege intentional misrepresentations that would take the conduct at issue outside the scope of the Petition Clause immunity doctrine.

[9] *Peterson v. XPO Logistics, Inc.*, Case No. 2:17-cv-307, 2017 WL 5054706, *3 (D. Utah Nov. 2, 2017) ("[t]he privilege applies to all of Peterson's tort claims and statutory claims for identity theft") (rev'd and remanded on other grounds by *Peterson v. XPO Logistics, Inc.*, ___ Fed. Appx. ___, 2020 WL 2121277 (10th Cir. May 4, 2020). Plaintiff does not address *Peterson* or the cases from Oregon and New Jersey (*Graham v. U.S. Bank, N.A.*, Case No. 3:15-cv-0990, 2015 WL 10322087, *16 (D. Or. Dec. 2, 2015) and *Thomason v. Lehrer*, 183 F.R.D. 161, 166-67 (D.N.J. 1998)) cited in Defendants' Opening Mem.

5

As to Plaintiff's argument that Defendants' conduct takes their actions outside of the judicial proceedings privilege, Utah's judicial proceedings privilege is extraordinarily broad.[11] The one exception that the Utah Supreme Court has carved out is where an attorney (or a party) has committed "fraud or bad faith".[12] Here, Plaintiff's Complaint alleges no such conduct. Rather, Plaintiff's claims boil down to a disagreement as to statutory and contractual interpretation. The conduct at issue here does not fall within the fraud or bad faith exception to Utah judicial proceedings privilege.[13]

### III. PLAINTIFF'S CLAIMS PREDICATED ON THE CONFESSION OF JUDGMENT THEORY FAIL AS A MATTER OF LAW

Neither Defendant is a "creditor" as defined by the UCC. Plaintiff asserts that OA is a creditor because "she believes that discovery will show Olson Associates had a

---

[10] *See, e.g., Johnson v. Riddle*, Case No. 2:98-cv-599, 2007 WL 528719, ** 2-3 (D. Utah Feb. 15, 2007) (holding the judicial proceedings privilege barred a claim for violation of Utah Consumer Sales Practices Act). Judge Stewart subsequent vacated his ruling in favor of a motion for reconsideration and to certify the issue to the Utah Supreme Court. After the issue was certified, the parties settled their dispute and, as a result, the Utah Supreme Court never had a chance to rule on the issue. In the event this Court is hesitant to apply Utah's judicial proceedings privilege to statutory claims, Defendants respectfully submit that the Court should stay this case and certify the issue to the Utah Supreme Court.

[11] *Moss v. Parr Waddoups Brown Gee & Loveless*, 2010 UT 42, ¶ 38, 285 P.3d 1157 (describing the privilege as having "extraordinary scope").

[12] *Peterson v. XPO Logistics, Inc.*, 2020 WL 212127, *5 (10th Cir. May 4, 2020).

[13] Plaintiff argues, without citation to any relevant authority, that "[a] common-law doctrine like the judicial proceedings privilege cannot be used to abrogate a substantive statute like *Utah Code Ann. §* 70C-2-201, or *Utah Code Ann. §* 13-11-4(q)." Opp. Mem. at 26. But as set forth above, courts have in fact applied the judicial proceedings privilege to bar statutory claims. Furthermore, Plaintiff's Complaint does not allege that Defendants' conduct violated *Utah Code Ann. §* 13-11-4(q) and she cannot, through her Opp. Mem., amend her Complaint to assert a non-pleaded claim. *Ayres v. Portfolio Recovery Associates, LLC*, Case No. 2:17-cv-01088, 2018 WL 6706021, *1 (D. Utah Dec. 20, 2018) ("she cannot amend her complaint through a brief in opposition to PRA's motion to dismiss").

financial interest in the funds it was collecting . . ." Opp. Mem. at 15-16. However, nowhere does the UCCC definition of a creditor include having "a financial interest in the funds" an attorney is collecting on behalf of a client.

Plaintiff's assertion that the settlement offer is a new obligation originally payable to NAR ignores the undisputed fact that Plaintiff *never* accepted, and in fact *expressly rejected*, the settlement offer. Thus, there was never any "new obligation". Furthermore, the proposed settlement offer entailed Plaintiff acknowledging that she owes the monies sought via the complaint filed in the State Court Lawsuit – monies owed pursuant to the IHC Agreement. Had she accepted the settlement offer, which she did not, she simply would have acknowledged the debt originally owed to the original creditor. That the amount of the debt had increased (as opposed to the existence of the debt) is of little moment – the debt was originally owed to Mountain West Anesthesia. Indeed, Plaintiff expressly states in her Opp. Mem. that "NAR is a debt collector, not the original creditor[.]" Opp. Mem. at 3. As such, neither NAR nor OA is a creditor under the UCCC.

Plaintiff lacks standing to seek a declaratory judgment that the alleged proposed confession of judgment violates the UCCC, or to seek attorney fees. As to attorney fees, Utah Code Ann. § 70C-7-204 (*see* Complaint, ¶ 104) permits fees only "where it is found that a creditor has violated this title or its agreement with the debtor . . ." But Plaintiff never accepted the settlement offer. There was never a violation of the UCCC and, therefore, Plaintiff has no claim for attorneys' fees and lacks standing to seek fees with respect to an alleged attempted violation of the UCCC.

Plaintiff states in her Opp. Mem. that she "is not seeking damages from Defendants but only declaratory relief . . ." with respect to her UCCC claim. Opp. Mem.

7

at 16. But in her prayer for relief, Plaintiff expressly seeks "statutory damages" for that claim. In light of Plaintiff's express disclaimer of seeking damages for violation of the UCCC, her request for statutory damages should be dismissed with prejudice.

Plaintiff's opposition also makes it clear she lacks standing to seek a declaratory judgment that the settlement offer she rejected would have violated the UCCC had she accepted it. Plaintiff claims she has standing because she was "deprived of a procedural right (i.e., not to be required to confess judgment)". Opp. Mem at 19. But Plaintiff was deprived of nothing. No one was requiring or forcing her to do anything. A settlement offer was made. A settlement offer was rejected. Her status in the State Court Lawsuit did not change. Thus she suffered no harm. Plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."[14,15]

## IV. THE COMMUNICATION FRAUD CLAIM FAILS

Plaintiff cites Utah Code Ann. § 78B-6-1701 for the proposition that she has a cause of action for communications fraud. But the statutory provision Plaintiff cites

---

[14] *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1549 (2016). "'Article III standing requires a concrete injury even in the context of a statutory violation." *Trichell v. Midland Credit Management, Inc.*, ___ F.3d ___, 2020 WL 3634917, *3 (11th Cir. July 6, 2020) (quoting *Spokeo*, 136 S.Ct. at 1549).

[15] Plaintiff appears to argue she has a right to require NAR to accept her counter offer. Apart from the fact that no such right exists anywhere in the law, rejection of the "confession of judgment" was not the only change Plaintiff made to NAR's settlement offer. Plaintiff struck out the language that "N.A.R., Inc. . . . is the Prevailing Party in this action and is now entitled to all amounts that could be awarded in any judgment", and she reduced the amount of attorneys' fees from $700 to $350. *See* Exhibit 2 to Motion to Dismiss. Plaintiff does not allege, and cannot allege in good faith, that NAR had any obligation to accept these two material changes. Plaintiff faced the risk of litigation before the settlement offer was made, and she continued to face the risk of litigation after she made these two material changes to NAR's settlement offer.

requires that a person "has been injured by a violation of . . . Section 76-10-1801 . . ." Here, Plaintiff has suffered no injury from Defendants' alleged conduct.

Furthermore, Utah Code Ann. § 76-10-1801, which is referenced in the code section upon which Plaintiff relies, specifically requires that the alleged false statements be made "intentionally, knowingly, or with a reckless disregard for the truth." Utah Code Ann. §76-10-1801(7). Here, the conduct about which Plaintiff complains boils down to a disagreement as to the interpretation of the UCCC, Utah Code Ann. § 12-1-11, and the IHC Agreement. Furthermore, the issues presented by Plaintiff's claims appear to be issues of first impression – i.e., does the UCCC apply to debt collectors such as Defendants, and does the IHC Agreement permit the recovery of the collection fee NAR seeks to recover in the State Court Lawsuit. Given these circumstances, and the fact that Plaintiff has suffered no injury by the conduct which she claims constitutes communications fraud, Plaintiff has no claim under Utah Code Ann. § 78B-6-1701.

## V. PLAINTIFF'S CLAIMS RELATING TO THE COLLECTION FEE FAIL

Plaintiff's theory hinges on her assertion that Utah Code Ann. § 12-1-11(3) mandates that "a creditor must establish in writing with the debtor the amount of the collection fee . . ."[16] Opp. Mem. at 2-3. But Utah Code Ann. § 12-1-11 contains no such requirement. Rather, the actual language of the code, as opposed to Plaintiff's paraphrasing, simply provides that "[t]he creditor shall establish the amount of the collection fee imposed under this section, except that the amount may not exceed the lesser of: . . ." Utah Code Ann. § 12-1-11(2)(b). There is no requirement that the amount of

---

[16] Plaintiff cites to the old version of Utah Code Ann. § 12-1-11(3). The language upon which Plaintiff relies is now found in Utah Code Ann. § 12-1-11(2)(b).

9

the fee be spelled out in the contract between the creditor and the consumer as Plaintiff argues. That contract (here, the IHC Agreement) simply is required to provide for recovery of a collection fee, and the creditor can separately establish the amount, or percentage, of the fee. As Plaintiff argued in her Opp. Mem., "courts are not to infer substantive terms into the text that are not already there." Opp. Mem. (quoting *Nevares v. M.L.S.*, 2015 UT 34, ¶ 34 n.6, 345 P.3d 719).

Defendants are not arguing that the common law trumps the Utah Code. Rather, Defendants are arguing that the IHC Agreement and the Utah Code both allow for the recovery of the fee at issue. The IHC Agreement allows for recovery of the fees at issue, as it provides that Plaintiff is obligated to pay "***all costs*** . . . that the Facility or an independent contractor ***incurs directly or indirectly if either refers my overdue bill for collection***." IHC Agreement, ¶ 9(e) (emphasis added). Indeed, Plaintiff does not argue that the original creditor does not incur, directly or indirectly, the 40% collection charge. Moreover, recovery of the fee is consistent with the plain language of Utah Code Ann. § 12-1-11, which requires an agreement between the creditor and the consumer which permits recovery of collection fees (here, the IHC Agreement), and further provides that the creditor shall establish the amount of the fee. And nowhere does Plaintiff allege that the original creditor did not establish the amount of the fee at issue.[17]

## **CONCLUSION**

Defendants request that this motion be granted in its entirety and that Plaintiff's Complaint be dismissed with prejudice.

---

[17] Plaintiff also argues she is entitled to judgment as a matter of law on her FDCPA claim. But DUCivR 7-1(b)(1) expressly prohibits the making of a motion in an opposition memorandum.

Dated this 28th day of July, 2020.

                                                  PRICE PARKINSON & KERR, PLLC

                                                  /s/ Ronald F. Price
                                                  Ronald F. Price
                                                  *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of July, 2020, the foregoing **REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)** was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing by e-mail to all counsel of record.

                                                  /s/ Ronald Price